**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal No. 13-00273 (SRN/FLN)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MORAN OZ (2);** | ) | **MEMORANDUM OPINION** |
| **BABUBHAI PATEL (3);** | ) | **AND ORDER** |
| **LACHLAN SCOTT MCCONNELL** | ) | |
| **(6);** | ) | |
| **ELIAS KARKALAS (8);** | ) | |
| **PRABHAKARA RAO TUMPATI (9);** | ) | |
| | ) | |
| **Defendants.** | ) | |

Jacqueline Blaesi-Freed, Linda I. Marks, U.S. Department of Justice, Consumer Protection Branch, 450 5th St. NW, Ste. 6400, Washington, DC 20001, and Roger J. Gural, U.S. Department of Justice, Civil Division, P.O. Box 386, Washington, DC 20044, for the United States of America.

Joseph S. Friedberg, Joseph S. Friedberg, Chartered, 701 4th Ave. S., Ste. 300, Minneapolis, MN 55415, Robert D. Richman, P.O. Box 16643, St. Louis Park, MN 55416, for Defendant Moran Oz.

JaneAnne Murray, Murray Law LLC, 310 South Fourth Ave., Ste. 5010, Minneapolis, MN 55415 for Defendant Babubhai Patel.

Marie Celine Pacyga and Ryan M. Pacyga, Pacyga and Associates, PA, 222 South Seventh St., Ste. 2850, Minneapolis, MN 55402, for Defendant Lachlan Scott McConnell.

Daniel L. Gerdts, 247 Third Ave. S., Minneapolis, MN 55415, John C. Brink, 310 4th Ave. S., Ste. 1008, Minneapolis, MN 55415, for Defendant Elias Karkalas.

James E. Ostgard, Ostgard Law Office, P.O. Box 582536, Minneapolis, MN 55458, Paul Daniel Schneck, Paul Daniel Schneck, LTD, 222 South 9th St., Ste. 1600, Minneapolis, MN 55402, for Defendant Prabhakara Rao Tumpati.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Government's Motion in Limine to Exclude Evidence of Duress and Evidence Relating to Paul Le Roux ("Gov't's Mot.") [Doc. No. 690]. For the reasons set forth below, the Court grants the Motion in part, denies the Motion in part, orders the parties to prepare for a hearing on issues presented in the Motion, and defers ruling on the remainder of the Motion until after that hearing is held.

## I.    BACKGROUND

Defendants Moran Oz ("Oz") and Lachlan Scott McConnell ("McConnell") are charged with various offenses related to their alleged involvement in unlawfully distributing prescription drugs over the Internet through an organization known as RX Limited ("RXL"). (See Indict. [Doc. No. 5].) Paul Le Roux ("Le Roux"), who is not a defendant in this case, is a "billionaire global criminal mastermind" who allegedly ran a multi-faceted criminal enterprise that included RXL. (McConnell's Reply to Gov't's Mot. to Exclude Evidence of Duress ("McConnell's Opp.") at 1 [Doc. No. 725]; see Gov't's Mot. at 2.) At a prior hearing in this case, Le Roux admitted to murdering foreign nationals in other countries, trafficking drugs internationally, arming a "private security team" in Somalia, sending arms to the Philippines, and hatching a plan to sell fertilizer, which could be used to make explosives, and chemicals necessary to manufacture methamphetamines. (Gov't's Mot. at 2–3.) In 2014, Le Roux pled guilty in the Southern District of New York to various charges, including: (1) conspiracy to import drugs, (2) exporting prohibited technology to Iran (and, as part of that offense,

2

participating in or causing six murders and soliciting a seventh), (3) computer hacking, (4) assisting an offender by paying a foreign official to impede the offender's extradition to the United States, and (5) offenses related to RXL including misbranding, mail and wire fraud, and conspiracy to commit money laundering.  (Id. at 3.)  Le Roux is awaiting sentencing on these charges.  (Id.)  The Government does not intend to call Le Roux as a witness in this case.  (Id.)

The Government anticipates that Oz and McConnell[1] will mount duress defenses at trial based largely on evidence relating to Le Roux.  (Id. at 1.)  However, the Government argues in relevant part that testimony related to duress should be excluded at trial because: (1) Oz and McConnell have not made the required prima facie showing of evidence in support of each element of duress, and (2) Le Roux's bad acts are irrelevant or otherwise inadmissible.  (See id. at 4–13, 15–20.)  In the alternative—if the Court refuses to exclude evidence related to the duress defenses outright—the Government requests a pretrial hearing requiring Oz and McConnell to proffer sufficient evidence to establish a prima facie case of duress.  (Id. at 14, 20.)

In response, Oz and McConnell concede that they intend to pursue duress defenses at trial and that these defenses will center largely on Le Roux.  (See Oz's Opp. to Gov't's Mot. to Exclude Evidence of Duress ("Oz's Opp.") [Doc. No. 728]; McConnell's Opp.) For instance, Oz contends that he believed Le Roux was a "sociopathic killer" and

---

[1] It does not appear from the record that Defendants Patel, Karkalas, or Tumpati intend to mount a duress defense.  If the Court is mistaken, any Defendant intending to present a duress defense at trial must immediately make that intent known to the Government and the Court and be prepared to participate in the pretrial hearing on this issue described below.

recounts how Le Roux allegedly "arranged for his henchmen to throw Oz in the ocean and fire a gun in circles around him. [Le Roux] made absolutely clear to Oz that he could expect the same treatment or worse if he took steps to leave Le Roux's employ." (Oz's Opp. at 8, 10, 13; see Gov't's Mot. at 5–6 (describing the same event).) Oz also contends that in another instance he suffered an "aggravated assault at the hands of Le Roux." (Oz's Opp. at 8.) McConnell describes Le Roux as "the most dangerous man in the world[.]" (McConnell Opp. at 1.) He recounts a time where Le Roux suspected McConnell and another individual of stealing from him and had the other individual murdered, but spared McConnell because Le Roux "needed him." (Id. at 3; Gov't's Mot. at 8 (describing the same event).) However, neither Oz nor McConnell have proffered specific evidence in support of their duress defenses.

Both Oz and McConnell argue that they should be allowed to present their duress defenses directly to the jury, without any pretrial examination of their evidence by the Court or the Government. (See Oz's Opp. at 1–3; McConnell's Opp. at 5–6.) In the alternative, they contend that their evidence is admissible and that they have satisfied any requirement to present a prima facie case as to the elements of duress. (See Oz's Opp. at 7–16; McConnell's Opp. at 2–6.)

## II.   DISCUSSION

### A.  Legal Standard

The Eighth Circuit defines the affirmative defense of coercion as follows:

Coercion which will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full

4

> opportunity to avoid the act without danger of that kind cannot invoke the
> doctrine of coercion . . . .

United States v. Logan, 49 F.3d 352, 359 (8th Cir. 1995) (quoting United States v. May,

727 F.2d 764, 765 (8th Cir. 1984)).  The closely related defense of duress contains the

following elements:

> (1) [the defendant] was under an unlawful and present, imminent, and
> impending threat of such a nature as to induce a well-grounded
> apprehension of death or serious bodily injury; (2) that he had not
> recklessly or negligently placed himself in a situation in which it was
> probable that he would be forced to commit a criminal act; (3) that he had
> no reasonable, legal alternative to violating the law; and (4) that a direct
> causal relationship may be reasonably anticipated between the commission
> of the criminal act and the avoidance of the threatened harm.

United States v. Diaz, 736 F.3d 1143, 1150 (8th Cir. 2013) (quoting United States v.

Gamboa, 439 F.3d 796, 816 (8th Cir. 2006)).  Thus, the test for duress "is virtually

identical in substance to the coercion test except that a defendant has the additional

burden of showing that []he had not recklessly or negligently placed himself in the

situation."  United States v. Ceballos, 593 F. Supp. 2d 1054, 1062 (S.D. Iowa 2009).

"Indeed, there seems to be some confusion in the jurisprudence as to whether duress and

coercion are, in fact, different tests and as to what circumstances warrant which defense."

Id. at 1062 n.9 (examining cases, some of which treat coercion and duress as separate

defenses and others that consider them to be synonymous).  However, the model criminal

jury instructions consider duress and coercion to be "interchangeable" and

"synonymous."   See Eighth Circuit Model Crim. Jury Instr. § 9.02, Committee

Comments.

Oz and McConnell also appear to consider the defenses of coercion and duress to be interchangeable. Based on the state of the law and the model jury instruction the Court will assume there is no need to distinguish them and will simply refer to the duress defenses.

## B. The Importance of a Pretrial Proffer

The Government contends that Oz and McConnell "are not entitled [to present a duress defense] until they demonstrate they can make a prima facie case, *i.e.*, present sufficient evidence of each element of the defense." (Gov't's Mot. at 4.) Specifically, the Government argues that the Court can and should make a pretrial determination as to whether Oz and McConnell have met their burden, and if they have not, exclude all evidence related to their duress defenses so that they are not "a constant and considerable distraction at trial." (See id. at 4, 14.) Although the Government believes the Court may already conclude Oz and McConnell have failed to provide the required prima facie showing, in the alternative, it requests that the Court hold a pretrial hearing to assess these defenses. (Id. at 14.)

Oz argues that he is not required to give the Government a preview of his duress defense. (Oz's Opp. at 1–3.) He contends that the Government's opinion to the contrary is merely an attempt to subvert the rules of discovery—which do not require him to disclose the evidence in support of his defense in advance of trial. (Id. at 2–3.) Instead, he asserts that "in the typical case, the evidence in support of a defense is presented at trial in the first instance." (Id. at 1.) Although Oz acknowledges that the Court "is to decide preliminary issues as to the admissibility of evidence," he argues that these

determinations are generally made at trial and further asserts that "it is not for the Court to make credibility determinations to assess whether a defense has merit." (Id. at 3.) McConnell agrees, and contends that he has presented sufficient evidence of duress to allow the issue to go to a jury. (McConnell Opp. at 5–6.)

The Federal Rules of Evidence direct that courts "*must* decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a) (emphasis added). In fact, the Rules suggest that the best practice is for a court to make what admissibility rulings it can before trial. See Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). Thus, district courts have the inherent authority to make pretrial evidentiary rulings through orders on motions in limine. Luce v. United States, 469 U.S. 38, 41 n.4 (1984). In making these preliminary determinations, the Rules explain that, "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104(b).

To the extent that Oz and McConnell argue that the Court cannot order them to proffer their planned duress defenses before trial, the Court disagrees. The Tenth Circuit recently addressed this issue and the Court finds its reasoning persuasive and adopts it here. See United States v. Graham, No. 15-4135, __ Fed. App'x __, 2016 WL 5799339 (10th Cir. Oct. 4, 2016). There, the defendant ("Graham") was charged with escape. Id. at *1. Before trial, the government brought a motion in limine seeking to exclude any

duress or necessity defense.  Id.  Graham opposed the motion, but also argued that
requiring him to proffer any evidence related to this duress defense before trial would
violate his constitutional rights under the Fifth and Sixth Amendments.  Id.  The district
court disagreed and gave Graham a choice: (1) proffer "some evidence" of his duress
defense before trial so that the court could make the appropriate admissibility
determinations; or (2) wait until the government finished its case in chief at trial, then—
outside the presence of the jury—Graham could cross-examine the government's
witnesses regarding duress and present his own evidence on the subject and if the defense
survived, the court would permit him to present it to the jury.  Id.  Graham rejected both
options, arguing that he had a right to present his duress defense, for the first time,
directly to the jury.  Id.  In light of this refusal, the district court precluded Graham from
presenting his duress defense at trial.  Id. at *2.  Graham was convicted and appealed.  Id.

On appeal, the Tenth Circuit described three ways in which a trial court can
control the presentation of evidence related to a duress defense: (1) rule on the adequacy
of the defense based on a pretrial proffer; (2) permit the defendant to present evidence of
this defense at trial, but, if the evidence is lacking, refuse to instruct the jury on duress;
or, (3) permit the defendant to present evidence of duress at trial but "manage the
presentation of that evidence by requiring the defendant to first satisfy any one of the
elements before proceeding further[.]"  Id.  Looking at the pretrial proffer option, the
court noted that it was "not uncommon for defendants to be required to proffer evidence
of their defense(s) in advance of trial[.]"  Id. at *3–4 (examining the Federal Rules of
Criminal Procedure and the rules of procedure in various states, all of which required

8

defendants to provide the government with pretrial notice of their intent to pursue certain defenses).  The Court then squarely rejected Graham's assertion that requiring a pretrial proffer violated his constitutional rights, "If a defendant refuses to make an evidentiary proffer such that the trial court cannot *consider* the evidence's admissibility, the trial court's exclusion of that evidence does not generally implicate a defendant's constitutional rights."  Id. at *3 (emphasis original); see United States v. Vasquez-Landaver, 527 F.3d 798, 802 (9th Cir. 2008) ("We have long held that a defendant is not entitled to present a duress defense to the jury unless the defendant has made a prima facie showing of duress in a pre-trial offer of proof.  Absent such a prima facie case, evidence of duress is not relevant." (citations omitted)); see also United States v. Bailey, 444 U.S. 394, 415 (1980) (requiring defendants charged with escape to make a pretrial proffer of evidence as to any duress defense).

The Tenth Circuit further explained that "requiring a proffer is constitutional regardless of *when* the trial court imposes such a requirement."  Graham, 2016 WL 5799339 at *5 (emphasis original).  Noting that the surprise disclosure of a defense at trial would entitle the government to a continuance, the court reasoned that "surely the same result may be accomplished through pretrial discovery [] avoiding the necessity of a disrupted trial."  Id.  (quoting Williams v. Florida, 399 U.S. 78, 86 (1970)).

A pretrial proffer is necessary here so that the Court may make an informed determination about the admissibility of the evidence.  Waiting until trial to make these determinations would likely cause considerable delays during the trial and potentially allow the presentation of inadmissible evidence to the jury—a result the Rules expressly

require the Court to avoid whenever possible.  This is not to say that all admissibility determinations related to the duress evidence will be made at the pretrial hearing, since it may not be possible for the Court to make some rulings until the context in which the evidence is presented at trial is made clear.  However, these proffers are necessary so that the Court can make some basic assessments of the evidence and set the ground rules for admissibility at trial.  Oz is correct that he is entitled to have a jury assess the credibility and weight of the evidence he offers in support of his duress defense, but that is a separate issue from whether that evidence is admissible in the first place (i.e., a jury may only consider admissible evidence).  See Bailey, 444 U.S. at 415 ("[P]recisely because a defendant is entitled to have the credibility of his testimony, or that of witnesses called on his behalf, judged by the jury, it is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense-here that of duress or necessity.").

In requiring Oz and McConnell to make proffers, the Court follows a common practice in federal courts, although the extent and format of the required proffer varies. See, e.g., United States v. Blankenship, 67 F.3d 673, 678 (8th Cir. 1995) (upholding the district court's preclusion of a duress defense based on the insufficiency of the defendant's pretrial proffer); United States v. Ibarra-Pino, 657 F.3d 1000, 1003 (9th Cir. 2011) (upholding the district court's decision to allow the defendant to present evidence of his duress defense at trial based on a pretrial proffer presented through motion papers, affidavits, and other documentary evidence, but ultimately refusing to instruct the jury on duress because the evidence introduced at trial was insufficient); Ceballos, 593 F. Supp.

2d at 1060–62 (engaging in a pretrial evidentiary hearing including sworn testimony from the defendant and expert reports); United States v. Ruiz-Celaya, No. CR1501160003PHXNVW, __ F. Supp. 3d. __, 2016 WL 5682835, at *2 (D. Ariz. Sept. 30, 2016) (pretrial proffer with documentary exhibits); United States v. Moran-Vazquez, No. 11-CR-30225-MJR, 2012 WL 12895411, at *5 (S.D. Ill. Apr. 4, 2012), aff'd, 547 F. App'x 793 (7th Cir. 2013) (written proffer).   Thus, the Court will leave it to Oz and McConnell—who, as described below, bear the burden of making a prima facie showing on each element of duress and establishing the admissibility of their evidence—what format(s) their proffer will take (e.g., statements of counsel, testimony, exhibits, written submissions, etc.).

### C. Admissibility

As just described, the Court must first better understand what duress evidence Oz and McConnell intend to present before it can make any admissibility determinations at the pretrial hearing.   However, because some of the parties' general admissibility arguments can be addressed without this showing—and to ensure the pretrial hearing is focused on the more specific determinations that must be made—the Court provides the following guidance.

First, Oz's and McConnell's pretrial evidentiary burden as to the elements of duress is minimal.  See Bailey, 444 U.S. at 415 (requiring that a pretrial proffer "meet a minimum standard as to each element of the defense"); United States v. Ridner, 512 F.3d 846, 849 (6th Cir. 2008) ("The defendant's preliminary burden is not a heavy one and is met even where there is weak supporting evidence. (quotations omitted)).  "To establish a

prima facie case, the defendant must present *some evidence* that *could* support each of the [elements of duress]."   United States v. Capozzi, 723 F.3d 720, 725 (6th Cir. 2013) (emphasis added).  The Court must assume that the evidence is true and correct as it is up the jury to make any credibility determinations about the evidence.  See Bailey, 444 U.S. at 415; Capozzi, 723 F.3d at 725.  Indeed, a "prima facie case" is defined in relevant part as "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."  Black's Law Dictionary (10th ed. 2014).  Thus, at this pretrial stage, the Court will accept the proffered facts as true and assess only whether there is a triable issue as to duress (i.e., whether Defendants have satisfied the requirement that they present a prima facie case as to each element of duress).

Second, the Government argues that any threats or violent acts done by Le Roux for reasons unrelated to the charged crimes (i.e., RXL and the alleged misbranding, distribution, and fraud it engaged in)—or that happened long before the charged crimes occurred—are irrelevant.  (See Gov't's Mot. at 8, 13.)  The Court disagrees, at least as to the Government's categorical understanding of relevance under these circumstances.

> [A] defendant's knowledge of prior violent acts, violent reputation, and routine carrying of a deadly weapon by an alleged coercer is relevant to a defendant's alleged apprehension in a duress case.  If a defendant puts forth a prima facie case of duress, evidence related to the defendant's knowledge of prior violent acts is relevant to explaining to the jury why his apprehension was well-grounded and why he considered the threat to be present, imminent, and impending.

United States v. Jones, 554 F. App'x 460, 466, 468 (6th Cir. 2014) (collecting federal appellate court cases with similar holdings); see United States v. Swanson, 9 F.3d 1354, 1359 n.10 (8th Cir. 1993) (acknowledging that if a defendant were aware of a coercer's

threats to another individual, those threats "might be admissible to demonstrate the 'well grounded' nature of [the defendant's] fear"); see also United States v. Bordeaux, 570 F.3d 1041, 1050 (8th Cir. 2009) (approving of the district court's decision to allow a defendant to testify about his victims' prior bad acts and reputation for violence to establish the reasonableness of his state of mind and use of force, as required for a claim of self-defense). However, this does not mean that all evidence of a coercer's prior violent acts or violent character is admissible. For instance, threats or instances of violence involving Le Roux of which Oz and McConnell were unaware at the time of their alleged criminal behavior are not relevant to their duress defenses. See Swanson, 9 F.3d at 1359 (8th Cir. 1993) (upholding the district court's exclusion of an alleged coercer's threats to other individuals where the defendant was unaware of them at the time he committed his offenses); Jones, 554 F. App'x at 467 (holding that the district court should have allowed evidence of an alleged coercer's prior assaults and reputation for violence to the extent the defendant was aware of them when he committed his crime); Bordeaux, 570 F.3d 1041, 1049–50 ("The district court properly distinguished between inadmissible evidence of prior acts committed by [the victims] that [the defendant] did not know about at the time of the shooting, and admissible evidence of acts and threats of which [the defendant] became aware prior to the shooting.").

Third, the Government argues that evidence of Le Roux's violent character and prior bad acts should be excluded as inadmissible character evidence. (Gov't Mot. at 15–17.) Federal Rule of Evidence 404(b)(1) prohibits "[e]vidence of a crime, wrong, or other act" if offered "to prove a person's character in order to show that on a particular

13

occasion the person acted in accordance with the character." However, that same Rule allows for the admission of such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). When a defendant rather than the government attempts to introduce this sort of character evidence, it is referred to as "reverse 404(b)" evidence. See United States v. Battle, 774 F.3d 504, 512 (8th Cir. 2014), cert. denied, 135 S. Ct. 1881 (2015).

The Court disagrees with the Government that all evidence of Le Roux's prior bad acts is inadmissible. As the Sixth Circuit explained when assessing the admissibility of character evidence regarding an alleged coercer:

> While evidence of Wright's [the alleged coercer] character is not admissible to prove Wright's propensity to act in a certain way, this does not limit the admissibility of evidence of Wright's prior acts and Wright's reputation for violence to prove Jones's [the defendant] fear of Wright, a purpose distinct from proving that Wright acted in accordance with the character on the night of the arson. The admissibility of such evidence is reinforced by Rule 404(b)(2)'s examples of permissible purposes: proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. The list is not exhaustive. ... Evidence of Wright's assaults and reputation that Jones was aware of is admissible to prove Jones's well-grounded apprehension of death or serious bodily injury[.] Although this purpose is not enumerated by Rule 404(b)(2), it is a proper purpose for evidence to be admitted.

Jones, 554 F. App'x at 467 (citations and footnotes omitted).

Fourth, the Government argues that allowing "[s]alacious testimony regarding Le Roux's prior wrongs would quickly devolve into a sideshow that steals the show, and the limited value of such evidence would be far outweighed by the prejudicial effect on the jury." (Gov't's Mot. at 18.) In essence, the Government argues that any evidence regarding Le Roux's prior bad acts and character is more prejudicial than probative of the

duress defenses.  (See id. at 18–19.)  Again, the Court disagrees, at least to the extent that the Government argues for a categorical preclusion of all evidence related to Le Roux.

Even evidence that is otherwise relevant may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  For instance, "reverse 404(b)" evidence is properly excluded where its probative value is "outweighed by the risk of distraction in conducting mini trials on the detailed facts underlying the long string of offenses [the defendant seeks] to introduce."  Battle, 774 F.3d at 514.  A trial court "has the responsibility for seeing that the sideshow does not take over the circus[,]" by excluding relevant evidence that carries a considerable danger of being unfairly prejudicial, confusing, or misleading.  See United States v. Brown, 547 F.2d 438, 446 (8th Cir. 1977) (quotations omitted).  However, this standard does not support a categorical ban on all evidence related to Le Roux and his prior bad acts.

As the Sixth Circuit explained:

> We recognize that admitting evidence regarding Wright's [the alleged coercer] prior assaults risks devolving into a series of minitrials about whether each prior assault by Wright actually happened, but this concern does not justify excluding all testimony about Wright's prior assaults. Rule 403 allows trial judges to limit evidence whose "probative value is substantially outweighed by a danger of ... confusing the issues, ... wasting time, or needlessly presenting cumulative evidence."  While it may have been needlessly cumulative and a waste of time to have seven witnesses testify as to Wright's prior acts, allowing some testimony about Jones's [the defendant] knowledge of Wright's reputation and prior assaults would inform the jury as to Jones's fear without wasting time or confusing the issues.

…

> [A] defendant has a right to introduce evidence to inform the jury about his state of mind, subject to other evidentiary limitations such as Rule 403. Without the evidence of Wright's prior assaults (including assaults against Jones, a threat of arson against a third party, and the commission of arson against Wright's own home) the jury was not provided with context that could explain why Jones would take the threat of burning down his house seriously even though he said he was not worried about being shot by Wright.

Jones, 554 F. App'x at 468–69 (6th Cir. 2014).  Thus, while some evidence regarding Le Roux may be inadmissible under Rule 403, the Court declines to adopt the Government's position that all such evidence must be excluded.  Once Oz and McConnell proffer the evidence related to their duress defenses, the Court may make informed admissibility determinations as to specific pieces or categories of evidence, or defer those rulings until trial.

## III.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. If any Defendant other than Oz and McConnell intends to present a duress defense at trial, he must make that intent known to the Court and the Government by **immediately** filing a letter on CM/ECF.

2. The Government's Motion in Limine to Exclude Evidence of Duress and Evidence Relating to Paul Le Roux [Doc. No. 690] is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Any Defendant who intends to present a duress defense at trial **must** satisfy the required prima facie showing as to each element of the defense through a pretrial proffer.  **These proffers will occur at hearing on January 13, 2017 at 9:00 a.m.;**

16

b. Any Defendant who intends to make such a proffer will, **no later than 12:00 p.m. on January 11, 2017, file a letter on CM/ECF** that contains the following:

   i. The anticipated format of the proffer (e.g., statements of counsel, documentary evidence, witness testimony, etc.);

   ii. If documentary evidence or witness testimony will be used, a list of the witnesses to be called and a copy of the documents to be considered must be attached to the letter; and

   iii. The amount of time the proffer is anticipated to take.

c. **The Government will submit briefing**, of no more than ten pages in length, on the admissibility of the Defendants' proffered duress evidence **by January 20, 2017**;

d. **Defendants will submit briefing**, of no more than ten pages in length, responding to the Government's arguments about the admissibility of their proffered duress evidence **by January 27, 2017**;

e. To the extent the Government argues that all evidence related to Paul Le Roux is categorically inadmissible, its Motion is **DENIED**;

f. The Court **DEFERS** making any specific admissibility rulings on evidence related to the Defendants' duress defenses until after the proffer hearing and the subsequent briefing from the parties is submitted.


Dated: January 4, 2017                    s/ Susan Richard Nelson
                                          SUSAN RICHARD NELSON
                                          United States District Judge

17